DOA
03/28/25

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| United States of America | Case No.: 25-9190 MJ |
|---|---|
| v. | **CRIMINAL COMPLAINT** |
| 1. Heriberto Valdez-Quintero Jr<br>2. Ariel Lopez Gonzalez | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

From on or about the date of March 19, 2025, through on or about March 28, 2025, in the County of Maricopa, in the District of Arizona, the defendants, Heriberto Valdez-Quintero Jr and Ariel Lopez Gonzalez, violated Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi), an offense described as:

Count 1: Conspiracy to knowingly and intentionally distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance.

I further state that I am a Special Agent with the United States Drug Enforcement Administration (DEA) and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

AUTHORIZED BY: AUSA William Bryan

Johanna Childress, Special Agent, DEA
Name of Complainant

JOHANNA CHILDRESS
*Digitally signed by JOHANNA CHILDRESS
Date: 2025.03.29 00:28:02 -07'00'*
Signature of Complainant

Sworn to telephonically and subscribed electronically

3/29/2025 @ 11:13am
Date

at   Phoenix, Arizona
City and State

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge
Name & Title of Judicial Officer

*ESWillett*
Signature of Judicial Officer

## STATEMENT OF PROBABLE CAUSE

I, Johanna Childress, Special Agent of the United States Drug Enforcement Administration (DEA), being duly sworn, declare and state as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am currently assigned to the Phoenix Field Division, Group 11 ("DEALERS"). DEALERS is a law enforcement group comprised of agents and officers from several federal and local agencies, assigned to investigate large-scale drug trafficking. I have been a Special Agent with the DEA since December 2022, and have served in various investigative and training capacities within the DEA's Phoenix Field Division Office. I have successfully completed the DEA Basic Agent Training in Quantico, Virginia, where I received several hundred hours of comprehensive, formalized instruction in such matters as drug identification, detection, trafficking and interdiction, money laundering techniques, and asset identification, seizure, and forfeiture.

2. Throughout my time in law enforcement, I have conducted and participated in multiple investigations involving the unlawful importation, transportation, and distribution of drugs including clandestine fentanyl, methamphetamine, cocaine, and marijuana. I have debriefed defendants and witnesses who had personal knowledge of major drug trafficking organizations. I have also executed search warrants and conducted physical and electronic surveillance using confidential sources and sources of information. I am familiar with methods employed by large drug trafficking organizations and the tactics they employ to evade law enforcement, such as the following: frequent changing of cell phones, the use of pre-paid phones (a.k.a. "burner phones"), counter surveillance techniques, the use of false or fictitious identities, and coded communications and conversations.

3. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable

cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

4.  On March 28, 2025, a confidential source (CS) communicated with a Phoenix-based drug trafficker regarding the purchase of approximately two (2) kilograms of suspected fentanyl powder at a price of US$13,000.00 per kilogram. The drug transaction was coordinated, in part, by the CS.

5.  The CS is believed to be credible and reliable. The CS is working for financial benefits. The CS has been working with law enforcement since 2019. To date, the CS has been involved in numerous law enforcement operations, which have led to the seizure of distribution quantities of methamphetamine, cocaine, fentanyl powder, M/30 fentanyl pills, and proceeds believed to be generated through the sale of controlled substances. The CS has numerous contacts throughout Arizona and Mexico who provide the CS with drug-related information. The CS shares this information with the DEA.

6.  Since March 19, 2025, the local Phoenix-based drug trafficker, later identified as Ariel Lopez Gonzalez ("LOPEZ GONZALEZ"), was in communication with the CS to facilitate the fentanyl powder transaction. The CS recorded the communications between the CS and LOPEZ GONZALEZ.

7.  On March 27, 2025, the CS communicated with LOPEZ GONZALEZ to discuss the pending fentanyl powder transaction. LOPEZ GONZALEZ then provided the CS an area along North 55th Avenue and McDowell Road in Phoenix, Arizona to conduct the fentanyl powder transaction on the following day (that is, March 28, 2025).

8.  On March 28, 2025, following communications between the CS and LOPEZ GONZALEZ, law enforcement officers established surveillance along 59th Avenue and McDowell Road, in Phoenix, Arizona, in anticipation of the fentanyl powder transaction. At approximately 10:18AM, LOPEZ GONZALEZ informed the CS that a black Honda had arrived at the proposed meeting location. Soon thereafter, investigators observed a black Honda Accord parked in the parking lot at the proposed meeting location. Surveillance officers observed the sole passenger and driver of the black Honda Accord,

later identified as Heriberto Valdez-Quintero Jr. ("VALDEZ-QUINTERO"), operating the black Honda Accord.

9. Shortly thereafter, law enforcement officers observed the CS park on the passenger side of the black Honda Accord. Thereafter, law enforcement surveillance officers observed the CS enter the passenger side of the black Honda Accord. After a brief conversation, investigators observed the CS exit the passenger side of the black Honda Accord and walk back towards the CS' vehicle. The CS alerted law enforcement officers that the CS had observed suspected drugs within the black Honda Accord.

10. Shortly thereafter, law enforcement officers wearing clearly marked police attire activated their lights and sirens and approached the black Honda Accord. Investigators thereafter detained VALDEZ-QUINTERO without incident.

11. During a search of the black Honda Accord, law enforcement officers observed a cellphone belonging to VALDEZ-QUINTERO on the front driver's side floorboard. Investigators also observed a gold-colored bag containing two (2) rectangular "brick-shaped" packages enveloped in brown and clear wrapping, and marked with a triangle. The packages contained a powdery substance suspected to be fentanyl.

12. The total gross weight (including packaging) of the suspected fentanyl powder was approximately 2.1306 kilograms. Law enforcement officers thereafter conducted a field-test of a sample of the suspected fentanyl powder, which sample indicated presumptive positive for the presence of fentanyl.

13. Law enforcement officers thereafter administered VALDEZ-QUINTERO his *Miranda* rights. VALDEZ-QUINTERO acknowledged his *Miranda* rights and agreed to speak with law enforcement officers without the presence of an attorney.

14. VALDEZ-QUINTERO admitted to being present at the location to participate in a fentanyl powder transaction. VALDEZ-QUINTERO also admitted that he (VALDEZ-QUINTERO) expected to be paid US$300 for delivering the fentanyl powder.

15. Following the arrest and interview of VALDEZ-QUINTERO, law enforcement officers initiated an investigation to determine the whereabouts of LOPEZ GONZALEZ. At approximately 11:30 A.M., investigators conducted surveillance at an

apartment complex in the area of 55th Avenue and Glenrosa Avenue, in Phoenix, Arizona in an attempt to locate LOPEZ GONZALEZ. While conducting surveillance in the area, investigators observed a Hispanic male matching the description of LOPEZ GONZALEZ exit a nearby apartment. At approximately 11:38AM, law enforcement officers wearing clearly marked police attire approached GONZALEZ outside of the aforesaid apartment unit and requested to speak with him (LOPEZ GONZALEZ). LOPEZ GONZALEZ agreed to speak with investigators.

16.     During the consensual interview with LOPEZ GONZALEZ, law enforcement officers advised LOPEZ GONZALEZ that he (LOPEZ GONZALEZ) was not under arrest. Law enforcement officers informed LOPEZ GONZALEZ that they were conducting an investigation relating to drug-trafficking. LOPEZ GONZALEZ agreed to speak with investigators and initially provided a false name. LOPEZ GONZALEZ told investigators that he (LOPEZ GONZALEZ) was not involved in illegal activity and that he (LOPEZ GONZALEZ) lived nearby. LOPEZ GONZALEZ pointed at his (LOPEZ GONZALEZ's) residence, the same residence from which law enforcement officers observed LOPEZ GONZALEZ depart during earlier surveillance. LOPEZ GONZALEZ provided consent to search his (LOPEZ GONZALEZ's) residence for illegal contraband.

17.     During the consensual interview with LOPEZ GONZALEZ, investigators spoke with additional residents inside the residence law enforcement officers previously observed LOPEZ GONZALEZ exit during earlier surveillance. All of the residents provided consent to search the aforesaid residence. During a consensual search of the residence, investigators discovered a large canvass bag under the master bedroom mattress containing a large sum of bulk United States currency, along with a Mexico-based identification issued to "Ariel Lopez Gonzalez". The individual depicted in the Mexico-based identification appeared identical to the individual who law enforcement officers encountered departing the aforesaid residence during earlier surveillance. Law enforcement officers displayed the Mexico-based identification to LOPEZ GONZALEZ, and LOPEZ GONZALEZ confirmed that the Mexico-based identification belonged to him (LOPEZ GONZALEZ). LOPEZ GONZALEZ further admitted that he (LOPEZ

GONZALEZ) previously provided investigators with a false name.

18. Law enforcement officers thereafter detained LOPEZ GONZALEZ and administered LOPEZ GONZALEZ his *Miranda* rights. GONZALEZ acknowledged his *Miranda* rights and agreed to speak with law enforcement officers without the presence of an attorney.

19. LOPEZ GONZALEZ informed investigators that he (LOPEZ GONZALEZ) was involved in drug-trafficking and money laundering activity. LOPEZ GONZALEZ admitted to receiving and temporarily storing drugs and cash proceeds while awaiting their eventual pickup by other individuals.

20. LOPEZ GONZALEZ said that he (LOPEZ GONZALEZ) received "product" on March 23, 2025. LOPEZ GONZALEZ told investigators that the "product" remained in his (LOPEZ GONZALEZ's) vehicle until March 28, 2025, whereafter LOPEZ GONZALEZ received instructions to meet with another individual (VALDEZ-QUINTERO) at a nearby laundromat to complete the transaction. LOPEZ GONZALEZ stated that an unknown individual would complete the transaction using his (LOPEZ GONZALEZ's) vehicle while LOPEZ GONZALEZ remained inside the laundromat.

21. During a consensual search of VALDEZ-QUINTERO's cellphone, law enforcement officers discovered voice notes transmitted by LOPEZ GONZALEZ to VALDEZ-QUINTERO providing information to VALDEZ-QUINTERO concerning the fentanyl powder delivery location. Law enforcement officers confirmed that the cellular telephone utilized by LOPEZ GONZALEZ was assigned the same telephone number as the communication facility used to communicate with the CS prior to and during the fentanyl powder delivery.

22. Based on facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that LOPEZ GONZALEZ and VALDEZ-QUINTERO did knowingly and intentionally conspire together and with others to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2

//

//

phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi).

_____
JOHANNA CHILDRESS
Digitally signed by JOHANNA CHILDRESS
Date: 2025.03.29 00:28:27 -07'

Johanna Childress
Special Agent
U.S. Drug Enforcement Administration

Subscribed electronically and sworn to telephonically on this ____29____ day of March 2025.

_____
HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE

6